UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

v.                                              CRIMINAL ACTION NO. 2:18-00023

**DAVID WAYNE MCDANIEL**

MEMORANDUM OPINION AND ORDER

Pending is defendant's <u>pro se</u> Motion for Reduction of Sentence Pursuant to 18 USC 3582(c)(1)(A) (ECF No. 57), received in chambers on June 1, 2020, and filed by the Clerk on August 21, 2020.  The defendant, who was subject to a mandatory term of imprisonment of ten years, was sentenced on January 10, 2019, to a term of 121 months.

The United States filed a response in opposition to the defendant's motion (ECF No. 61) on September 10, 2020. Defendant's reply (ECF No. 62) was filed on September 25, 2020.

In connection with his motion, the defendant has also filed the following documents: (1) Modification of Recently Submitted Letter/Motion (ECF No. 58), filed August 21, 2020; (2) Addendum to Motion (ECF No. 60), filed September 4, 2020; and (3) Supplemental Filing of Defendant in the Support of Motion

for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 63), filed December 2, 2020.

The court notes that it received the following letters from the defendant: (1) a letter from the defendant with an enclosed "Letter of Support," from H. Rose of Crossroads Prison Ministries, received in chambers on March 22, 2021; (2) a letter supplementing the defendant's motion, received in chambers on August 27, 2021; (3) a document titled "Situational Update in Regard to Defendant's Motion for Compassionate Release," received in chambers on September 3, 2021; and (4) a document titled "Situational Update," received in chambers on December 3, 2021. The court ORDERS that the letters be, and they hereby are, filed.

I. Background

On September 4, 2018, defendant David Wayne McDaniel ("McDaniel") pled guilty to possession of child pornography in violation of § 2252A(a)(5)(B). Plea Hearing, ECF No. 40; Written Plea of Guilty, ECF No. 41; Plea Agreement, ECF No. 43. By virtue of McDaniel's prior conviction for sexual abuse of a minor, he became subject to the ten-year mandatory minimum.

In preparation for sentencing, a United States Probation Officer completed a Presentence Investigation Report ("PSR"). PSR, ECF No. 55. The PSR indicated McDaniel used a peer-to-peer computer program to obtain and distribute child pornography. Id. at ¶ 52. The PSR found that McDaniel was responsible for 1,052 images containing child pornography. Id. at ¶ 53.[1]

McDaniel had prior convictions related to the sexual abuse of a minor. Specifically, he was convicted of two counts of first-degree sexual abuse in 2006 for the abuse of his then stepdaughter when she was eleven and twelve years old. Id. at ¶¶ 45–46, 79.

Based on the foregoing, the PSR found that the base offense level for McDaniel's offense was 18. Id. at ¶ 62. Additionally, it found that the following specific offense characteristic enhancements applied: (1) a 2-level increase

---

[1] The amount of child pornography obtained by McDaniel's is likely significantly larger. A search of McDaniel's computer and two hard drives led to agents locating "44 video files and 462 image files containing suspected child pornography, which were submitted to NCMEC for possible identification of known victims." PSR ¶ 43. The PSR notes, "[a]ccording to the Government, the remaining videos and imagines were 'age questionable' and were not identified by NCMEC. Therefore, out of an abundance of caution, the additional imagines and videos have not been counted as child pornography for relevant conduct purposes." Id. at 13 n.7.

pursuant to U.S.S.G. § 2G2.2(b)(2) because the material involved prepubescent minors under the age of 12; (2) a 2-level increase pursuant to U.S.S.G. § 2G2.2(b)(3)(F) because the offense involved distribution of child pornography; (3) a 4-level increase pursuant to U.S.S.G. § 2G2.2(b)(4) because the offense involved child pornography portraying sadistic or masochistic conduct or other depictions of violence; (4) a 5-level increase pursuant to U.S.S.G. § 2G2.2(b)(5) because McDaniel had engaged in a pattern of activity involving the sexual abuse or exploitation of a minor; (5) a 2-level increase pursuant to U.S.S.G. § 2G2.2(b)(6) because the offense involved the use of a computer; and (5) a 5-level increase pursuant to U.S.S.G. § 2G2.2(b)(7)(D) because the offense involved 600 or more images of child pornography. Id. at ¶¶ 63–68. McDaniel received a three-level decrease for acceptance of responsibility. Id. at ¶¶ 74–75. His Total Offense Level became 35.

According to the PSR, McDaniel had 3 Criminal History Points for his 2006 first degree sexual abuse convictions out of the Putnam County Circuit Court in Winfield, West Virginia. Id. at ¶¶ 79–80. Two points were added pursuant to U.S.S.G. § 4A1.1(d) because the offense of conviction was committed while McDaniel was under a criminal justice sentence for the first degree sexual abuse convictions. Id. at ¶ 81. Consequently,

4

Riley's Criminal History Score was 5, and he was placed in Category III.  Id. at ¶ 82.

At sentencing, the court adopted the PSR without change.  SOR 1, ECF No. 54.  With a Total Offense Level of 35 and Criminal History Category of III, McDaniel was subject to an advisory guideline range of 210 to 240 months.  Id.  As noted, McDaniel's crime of conviction was subject to a mandatory minimum of 10 years.  Id.

At sentencing, the court granted a downward variance, noting that the guideline range was too severe in that many of the enhancements applied "are routinely present in most cases involving the possession of child pornography."  SOR 5.  The court also stated that it believed that the enhancement for McDaniel's distribution of child pornography should be tempered inasmuch as his distribution activity was due to his downloading child pornography to a shared folder where others could obtain it.  Id.  The court considered his close familial relationships, the care he provided for his mother and brother while they were ill, as well as the fact that they both passed away while he was incarcerated.  Id.

Ultimately, the court concluded that a downward variance of five levels was appropriate.  Id.  This variance resulted in a Total Offense Level of 30, and when coupled with

5

McDaniel's Criminal History category of III, yielded a guideline range of 121 to 151 months. Id. The court sentenced McDaniel to a term of 121 months, to be followed by a 20-year term of supervised release. Id.; Judgment, ECF No. 52.

McDaniel, now 57 years of age, is currently serving his sentence at FCI Ashland. Fed. Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/(last visited August 3, 2022). McDaniel's estimated release date is April 4, 2026. Id.

## II. Legal Standard

Generally, once a court has imposed a term of imprisonment, it lacks the authority to modify the sentence. 18 U.S.C. § 3582(c). In December 2018, however, Congress enacted the First Step Act, which amended 18 U.S.C. § 3582 and enabled courts to reduce a term of imprisonment under certain circumstances. First Step Act of 2018, Pub. L. No. 115–391, § 603, 132 Stat. 5194, 5239.

As amended, § 3582 provides that after satisfying an administrative exhaustion requirement,[2] courts may reduce a

---

[2] Inasmuch as the United States does not assert McDaniel has failed to exhaust his administrative remedies, the court does not address the sufficiency of McDaniel's exhaustion. See United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (holding exhaustion of administrative remedies under § 3582(c)(1)(A) is non-jurisdictional and may be waived if not timely raised by the government).

sentence if (1) "extraordinary and compelling reasons warrant such a reduction," (2) "reduction is consistent with the applicable policy statements issued by the Sentencing Commission," and (3) release is consistent with the factors listed under 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has clarified that at the current time there are no "applicable policy statements issued by the Sentencing Commission."  See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020).  Accordingly, the court is not limited by an enumerated list of reasons that warrant relief and "enjoy[s] broad discretion in conducting this analysis."  United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021).

### III.   Analysis

McDaniel asserts that compassionate release is warranted in his case due to concerns surrounding the COVID-19 pandemic.  ECF No. 57, at 6–12, 20–21.

McDaniel pleads that he is at risk for contracting or succumbing to COVID-19 due to his medical conditions, which he says include liver issues, kidney issues, heart conditions, lung

issues, severe obesity, and auto-immune disorders. Id. at 10–12.[3]

McDaniel also states that he "has several additional medical issues such as Seizure Disorder, Anxiety, Depression, PTSD, Gout, GERD, and others which may or may not be considered a risk factor with regard to COVID-19." Id. 57, at 12.

In addition to COVID-19 and medical concerns, McDaniel's motion continues to list several additional circumstances he believes the court should consider as he seeks compassionate release: (1) that he was the primary caregiver to his mother and brother prior to his arrest and that they both passed away while he was in custody; (2) he "has a family medical history of early-age death"; and (3) he provided the government with information relating to "D. Wolfe" who had plans to target the undersigned and others. Id. at 18–21.

McDaniel's supplemental documents aver (1) he has taken part in institutional and faith-based programming during his incarceration, see ECF No. 60; (2) medication changes imposed by the BOP place him at a higher risk for contracting viruses like COVID-19, id. at 10; and (3) that FCI Ashland

---

[3] In its response, the Government takes particular exception to the defendant's claims of obesity and kidney issues. ECF No. 61, at 3.

experienced a sharp uptick in COVID-19 cases in November 2020, ECF No. 63.

To the extent that McDaniel asserts that his medical conditions place him at higher risk of illness or death should he contract COVID-19, courts have found "extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020); see United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious or even fatal, case of COVID-19.").

While McDaniel has not provided the court with medical records corroborating his proffered conditions, the Presentence Report that was prepared in advance of McDaniel's sentencing advised the court that McDaniel had a history of medical conditions including obstructive lung disease, non-alcoholic fatty liver disease, supraventricular tachycardia, and mild pulmonary regurgitation.  PSR ¶¶ 98–111.

According to the CDC, individuals with chronic lung diseases, chronic liver diseases, and heart conditions are at an elevated risk of developing severe illness after contracting COVID-19.  See Center for Disease Control, Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022).

However, even assuming that McDaniel's conditions place him in a higher risk category, the court cannot at this time conclude that McDaniel is at a higher risk of contracting COVID-19 in prison than he would be if released.  As of August 5, 2022, the BOP reports that FCI Ashland has zero active COVID-19 cases amongst inmates and one confirmed case amongst staff.  See Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited August 5, 2022).

Given the absence of cases present at McDaniel's prison facility – particularly when compared with the marked presence of COVID-19 outside the prison system - the court simply cannot find that McDaniel is more likely to contract COVID-19 at his prison facility than he would if released.  See CDC, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases (last visited August 5, 2022)

(showing upward trend in the COVID-19 cases in the United States).

Accordingly, the court finds that, under the circumstances, McDaniel has not shown himself to be at undue risk from COVID-19.[4]

Next, to the extent McDaniel claims that compassionate release is warranted based on his medical condition as a whole, the court finds he has not shown substantial diminishment of his ability to provide self-care in the environment of the correctional facility. Nor has McDaniel shown that the BOP has been unresponsive to his health care needs. Accordingly, the court concludes that McDaniel's medical conditions are not so extraordinary and compelling as to warrant compassionate release.

---

[4] The court also notes that the BOP has administered 1,244 full inmate inoculations at FCI Ashland. COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited August 5, 2022). McDaniel reports that he has refused COVID-19 vaccination for religious reasons. While inmates have the right to refuse inoculation, many courts have found that refusal to receive a vaccine which may prevent the contraction of the virus or minimize its effects is fatal to a defendant's claim that concerns related to the COVID-19 pandemic are "extraordinary and compelling." See United States v. Broadfield, 4 F.4th 801, 803 (7th Cir. 2021); United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished) (collecting cases); United States v. Johnson, No. CR 18-578-01 (KM), 2022 WL 901468, at *5–6 (D.N.J. Mar. 28, 2022) (collecting cases).

Finally, the court finds that even if McDaniel had proffered reasons sufficient to establish extraordinary and compelling circumstances under § 3582, he is not eligible for compassionate release because he remains a decided danger to the community and early release would not be consistent with the factors set forth in § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A).

McDaniel, having been previously convicted of sexually abusing a child, possessed a collection of child pornography videos which included depiction of violent or sadistic abuse of juveniles.  Moreover, prior sexual abuse of a child subjected him to a mandatory minimum sentence of ten years.  See 18 U.S.C. § 2252A(b)(2).

To date, McDaniel has served 59 months of his 121-month sentence.  The court does not believe such an abbreviated sentence is in this instance adequate to serve the needs of either specific or general deterrence.[5]

---

[5] This finding is further supported by McDaniel's current assertions that he did not seek out or distribute pornography. See ECF No. 62, at 2-3.  These assertions are at odds with the statements he made to the police, as reproduced in the PSR.  See PSR 35 ("David McDaniel admitted he knew it was wrong to view child pornography; however, he stated he battled it similar to those battling drug addiction.  McDaniel stated he would install the Shareeza program, download child pornography, begin to feel guilty, and delete the program to remove the 'temptation.' He says he did this on multiple occasions.  The defendant stated he

IV. Conclusion

Accordingly, the court ORDERS that McDaniel's pro se Motion for Reduction of Sentence Pursuant to 18 USC 3582(c)(1)(A) (ECF No. 57) be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to the defendant and all counsel of record.

ENTER: August 9, 2022

John T. Copenhaver, Jr.
Senior United States District Judge

---

preferred to view child pornography of females age 15 or younger, though he recalled viewing images of females as young as eight years old."). McDaniel's apparent denial of responsibility serves to contradict his suggestion that he is actively engaging in rehabilitation and does not pose a risk of recidivism.

13